IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN C. GARDOSKI,                        )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )   C.A. No. 17-1467 (MN)
                                         )
PATS AIRCRAFT, LLC, a Delaware limited   )
liability company, d/b/a ALOFT           )
AEROARCHITECTS,                          )
                                         )
        Defendant.                       )

## MEMORANDUM OPINION

William D. Fletcher, Jr., Gary E. Junge, SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE – attorneys for Plaintiff

Margaret M. DiBianca, SMITH KATZENSTEIN JENKINS LLP, Wilmington, DE – attorneys for Defendant

December 7, 2018
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the motion of Defendant Pats Aircraft, LLC, d/b/a ALOFT Aeroarchitects ("Defendant" or "ALOFT") to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff John G. Gardoski ("Plaintiff") has failed to state a claim upon which relief can be granted. (D.I. 6). For the reasons set forth below, the Court denies Defendant's motion to dismiss.

## I.   **BACKGROUND**

Plaintiff was employed by Defendant from April 2006 to February 13, 2017. (D.I. 1 ¶¶ 9, 12, 16). During his employment, Plaintiff held the position of "Materials Stockroom III" at Defendant's Georgetown, Delaware location and was assigned to work during the first shift. (*Id.* ¶ 10). On or about January 1, 2017, Plaintiff took approved medical leave, pursuant to the Family Medical and Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, due to his affliction with colon cancer. (*Id.* ¶ 12). While Plaintiff was on approved medical leave, Defendant placed another employee – who had previously worked the second shift – into the vacancy created by Plaintiff's absence. (*Id.* ¶ 14). On February 13, 2017, Plaintiff returned to work from leave. (*Id.* ¶ 12). That same day, Plaintiff was given a letter stating that he was being terminated "as a result of a workforce reduction," and was "eligible for rehire and [was] welcome to apply for any positions" that might be available in the future. (*Id.* ¶ 19, Ex. B). Additionally, Plaintiff was given a document titled "Agreement and General Release" (the "Release"), which outlined a release of claims against Defendant in exchange for consideration in the amount of $4,699.20. (*Id.* ¶ 20, Ex. C). The Release includes the following provisions that are relevant to ALOFT's motion (*id.*):

> 4. **General Release of Claims**. Employee knowingly and voluntarily releases and forever discharges the Employer . . ., of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against [ALOFT] as of the date of execution of this Agreement and General Release,

including but not limited to, any alleged violation of . . . any other federal, state or local law, rule, regulation or ordinance; any public policy, contract, tort or common law. . . .[1]

*    *    *

8. **Governing Law and Interpretation**. This Agreement and General Release shall be governed and conformed in accordance with the laws of Delaware . . . .

*    *    *

11. **Entire Agreement**. This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. *Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release . . . .* (emphasis added).

*    *    *

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO FORTY-FIVE (45) DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.**

*    *    *

**EMPLOYEE MAY REVOKE THIS AGREEMENT AND GENERAL RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.**

*    *    *

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

---

[1] The Release included a list of fifteen specific federal and Delaware statutes, as well as a catch-all phrase encompassing "any other federal, state, or local law, rule, regulation, or ordinance." (D.I. 1, Ex. C ¶4).

On February 17, 2017, Plaintiff signed the Release. (*Id.*). Plaintiff alleges that he relied upon the statement that he was "eligible for rehire and [] welcome to apply for any position that [ALOFT] may have open in the future," when he executed the Release. (D.I. 1 ¶ 30).[2] Following his termination, Plaintiff learned that his direct supervisor told colleagues that it was concerns of future job performance and attendance related to Plaintiff's cancer diagnosis that led to his termination. (*Id.* ¶¶ 21-22, 24). Moreover, Plaintiff learned his supervisor said he "would not hire Plaintiff in the future." (*Id.* ¶ 23).

On October 17, 2017, Plaintiff filed his Complaint alleging that his was fraudulently induced into signing the Release, and that had he known that Defendant had no intention of rehiring him in the future, he would not have executed the agreement. (*Id.* ¶ 31). Plaintiff also alleges that because he took approved FMLA leave: (1) he was "subject to the alleged RIF," (2) his position was not held for him, and (3) he suffered an "adverse decision [] causally related to his medical leave," in violation of the statute. (*Id.* ¶¶ 33-38). Plaintiff asserts that FMLA claims are not covered under the Release or, alternatively, that the Release is voidable because he relied on Defendant's fraudulent misrepresentation that he would be re-hirable at a later date. (*See, e.g.*, D.I. 8 at 4-5).

## II.     LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When reviewing a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

---

[2]     According to Plaintiff, the "Defendant's employee handbook states that, '. . . ordinarily, severance pay is not granted. Under certain circumstances, however, Company management may elect to offer severance to an employee in exchange for the employee signing a general release agreement prepared by the Company.'" (*Id.* ¶ 18, Ex. A).

2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider *only* the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

## III.   DISCUSSION

In reviewing the Defendant's motion to dismiss, the Court considers two questions: (1) whether Plaintiff has made a plausible claim that Defendant fraudulently induced him into executing the release, and (2) whether Plaintiff has made a plausible claim that Defendant violated the FMLA. As a threshold matter, in addressing issues of contract interpretation, the Court must

"give priority to the parties' intentions as reflected in the four corners of the agreement" and "interpret clear and unambiguous terms according to their ordinary meaning." *Riverbend Community, LLC v. Green Stone Engineering, LLC*, 55 A.3d 330, 334-5 (Del. 2012) (citing *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779-80 (Del. 2012)) (internal quotations omitted).

### A.     Plaintiff Has Made A Plausible Claim That He Was Fraudulently Induced to Execute the Waiver

"[W]here the language of the release is clear and unambiguous, it will not lightly be set aside." *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982). The Delaware Supreme Court has noted, however, that "[i]t is quite another thing . . . to conclude that a person is deemed to have released a claim of which he has no knowledge, when the ignorance of such a claim is attributable to fraudulent conduct by the released party." *E.I. DuPont de Nemours and Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 461 (Del. 1999). "At a minimum, if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud." *Id.*

Under Delaware law, fraudulent inducement may be found when

"(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance."

*Cato Capital LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 624-5 (D. Del 2014) (citing *DCV Holdings, Inc. v. ConAgra Holding, Inc.*, 889 A.2d 954, 958 (Del. 2005)). In his Complaint, Plaintiff alleges that: (1) he was told his termination was due to a reduction in force, (D.I. 1 ¶ 16); (2) his severance letter included a statement that he was eligible for rehire and encourage him to apply for positions that would open in the future, (*Id.* ¶ 19, Ex. B); (3) his supervisor later

acknowledged to coworkers that Plaintiff was terminated due to concerns about his health, (*Id.*
¶ 21); (4) his supervisor stated that he would not rehire Plaintiff despite what the severance letter
said, (*Id.* ¶ 23); and (5) Plaintiff relied upon the termination letter's statement in signing the Release
so to "maintain a relationship with Defendant, which would result in his rehire in the near future."
(*Id.* ¶ 27). Viewing these facts in the light most favorable to Plaintiff, it appears that Plaintiff has
pleaded sufficient facts to raise a reasonable inference that Defendant is liable for the alleged
conduct.

Defendant, however, argues that such a claim is precluded because of the "non-reliance"
clause located in the Release. Specifically, in the second sentence of the merger section, the
Release states that Plaintiff "has not relied on any representations, promises, or agreements of any
kind made to [him] in connection with [his] decision to accept this Agreement and General
Release, except for those set forth in [the Release]." (*Id.*, Ex. C ¶ 11). Defendant cites *Kronenberg
v. Katz*, 872 A.2d 568 (Del. Ch. 2004), for the proposition that fraudulent inducement claims are
barred where a contract includes "language that, when read together, can be said to add up to a
clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon
statements outside the contract's four corners in deciding to sign the contract." (D.I. 9 at 4).
Defendant argues that here "there *is* a clear anti-reliance clause, which unequivocally provides that
Plaintiff did not rely on any representation by Defendant in executing the Release," and thus the
Release bars claims of fraudulent inducement. (D.I. 9 at 4-5). Review of *Kronenberg*, however,
reveals some nuance ignored by ALOFT. First, in *Kronenberg*, the Court considered an LLC
agreement between sophisticated parties when it held that a clear anti-reliance clause could bar a

fraud claim. *Kronenberg*, 872 A.2d at 574-75.[3]  Second, after reviewing the record, the Court

concluded that the defendants could not rely on the anti-reliance clause because it was not

unambiguous, not heavily negotiated, and because defendants made material misstatements to

plaintiff. *Id.* at 593-94.  Here, the record before the Court suggests that the anti-reliance clause

was not negotiated or highlighted, but rather exists within a boiler plate merger clause near the end

of the document.  Unlike many of the clauses of the Release, the anti-reliance language was not

set apart, bolded, capitalized, or in any way identified to call it out or signify its importance.

Moreover, here, the drafter of the release was a sophisticated party, but the Plaintiff was, by all

accounts, an unsophisticated party, and thus, under *Norton v. Poplos*, 443 A.2d 1, 6 (Del. 1982),

it is possible that the presence of anti-reliance language is not dispositive of Plaintiff's claims.  The

Court finds that Plaintiff, on the facts currently before the Court, has made a plausible claim for

relief for fraudulent inducement.

**B.     Plaintiff Has Made A Plausible Claim for Relief from Retaliation
        Under the FMLA**

As to Plaintiff's claim of retaliation under the FMLA, under Third Circuit law, a claim of

retaliation requires Plaintiff to show: (1) he invoked his right to FMLA leave; (2) he suffered an

adverse employment decision; and (3) the adverse decision was causally related to the invocation

of FMLA rights.  *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 301-02

(3d Cir. 2012).  In his complaint, Plaintiff alleges that he took approved FMLA leave "from on or

about January 1, 2017 to on or about February 13, 2017" (D.I. 1 ¶12); he was terminated from

---

[3]     The Court cited a holding of the Delaware Supreme Court, which found that an agreement
        could be rescinded based on "the relatively unsophisticated nature of the parties involved
        in the case, the fact that they were entering a simple real estate contract and did not bargain
        over the specific disclaimer language." *Kronenberg*, 872 A.2d at 590 (citing *Norton v.
        Poplos*, 443 A.2d 1 (Del. 1982)).  In *Norton*, the Court found that not only fraud, but an
        innocent misrepresentation could be a ground for rescinding an agreement, even where an
        explicit anti-reliance clause was present in a contract.  443 A.2d at 6.

employment on the day he returned from leave (*Id.* ¶19); and his former supervisor told a coworker that Plaintiff's termination was related to the health issues which necessitated his FMLA leave (*Id.* ¶21-22). Viewing these facts in the light most favorable to the Plaintiff, it appears that Plaintiff has pleaded sufficient facts to raise a reasonable inference that Defendant is liable for the alleged conduct. Defendant, however, argues that the FMLA claims are barred by the Release signed by Plaintiff. Thus, in determining whether Plaintiff has stated a plausible FMLA claim, the Court must determine whether Plaintiff waived such claims in the February 2017 Release.

The Third Circuit has found that an employee may waive employment related claims against an employer so long as such a waiver is made both knowingly and willfully. *See Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). "[W]hether a waiver has been 'knowingly and willfully' made has been predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Id.* Those indicia are laid out in the Third Circuit's totality of the circumstances test, including:

> "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release before signing it; (5) whether plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by law."

*Geraghty v. Insurance Servs. Office, Inc.*, 369 F. App'x 402, 405 (3d Cir. 2010) (citing *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988) *superseded by statute as stated in Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997) (holding that the factors established in *Cirillo* were no longer applicable to alleged waiver of ADEA rights).

The Third Circuit has noted that, in addition, courts "may also consider 'whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against

8

the public interest.'" *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005).

Plaintiff argues that a review of the factors weighs in favor of a finding that the Release is invalid and unenforceable. (D.I. 8 at 10). Specifically, Plaintiff argues that the Release was procured by fraud, failed to use unequivocally clear language to state which claims were being waived, lacked language sufficient to explain Plaintiff's rights prior to execution, and did not clearly state that the $4,699.20 was consideration beyond what Plaintiff was already entitled to receive. (*Id.* at 12-15). Plaintiff does not contest Defendant's characterizations that the third and fifth factors weigh in favor of validity – Plaintiff "was given forty-five (45) days to consider the Release and an additional seven (7) days to revoke" and "was expressly encouraged to seek legal counsel." (D.I. 7 at 8). The Court will analyze each factor in turn.

> i.      *Clear and Specific Language*

This factor weighs against finding the Release was made knowingly and willfully. Defendant argues "the Release uses unequivocally clear language to state which claims Plaintiff is waiving," because it disclaims "any and all claims, known and unknown, asserted or unasserted which [Plaintiff] has or may have against Releasees as of the date of execution." (D.I. 7 at 7-8). The Court agrees in part. Releases have been found to contain clear language where a bolded, underlined, and set apart "general release" section "clearly states that by signing the agreement the employee forever waives, releases and discharges [defendant] from any and all actions" and includes a list of "specific kind[s] of claims included in the waiver." *See Roberts v. Comcast Cable Co.*, C.A. No. 03-397-GMS, 2004 WL 1887487, at *5 (D. Del. Aug. 23, 2004).

Here, like *Roberts*, the Release includes a section titled "General Release of Claims," which is bolded and underlined. (D.I. 1, Ex. C at 1). The section disclaims "any and all claims" that Plaintiff has against Defendant at the time of execution and lists a number of specific claims

that are being waived. (*Id.*). Then, it includes a list of fifteen specific state and federal statutes, as well as three catch-all provisions. (*Id.*). Lastly, the final clause of the Release states in bold and capital letters "**EMPLOYEE . . . ENTERS INTO THIS AGREEMENT . . . INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**" (*Id.* at 3-4). Considering this language and giving the terms "any and all claims" and "all claims" their ordinary, inclusive meaning, the Release is clear. The Third Circuit, however, also requires the Court to review the "specificity of the release language." *Geraghty*, 369 F. App'x at 405.

Defendant argues that the Release is specific, citing a case holding that "the mere fact that the waiver sweeps broadly and releases all potential claims does not make it unclear or ambiguous." (D.I. 9 at 3 (citing *Gregory v. Derry Twshp. Sch. Dist.*, Civ. A. No. 09-780, 2010 WL 146332, at *6 (M.D. Pa. Jan. 11, 2010)). While that may be true as to clarity, the Court is unaware of any District of Delaware or Third Circuit law addressing whether the term "all claims" is sufficiently specific to indicate a waiver of a specific unnamed statute – and that remains an open question.

Moreover, here, the Release does not include the FMLA in its list of waived statutory claims, despite mentioning the statute later in an acknowledgment. It appears to be an open question whether FMLA claims can be waived in a general release or whether such a waiver must be made explicitly[4]. Reading the facts in a light most favorable to Plaintiff, it is plausible that the

---

[4]     Following changes to Department of Labor regulations governing the FMLA, it is now understood that FMLA claims can be waived in a severance agreement, so long as the waiver is not prospective. *See, e.g., Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1123 (11th Cir. 2014) ("It is now, therefore, well-settled that an employee may not waive 'prospective' rights under the FMLA, but an employee *can* release FMLA claims that concern past employer behavior."). The change in regulations, however, does not address whether such claims must be waived expressly.

Release's language is not sufficiently specific to suggest that Plaintiff's acquiescence to the agreement was knowing and willful. The Court finds this factor weighs in favor Plaintiff.

### ii.     Plaintiff's Education and Business Experience

This factor neither weighs in favor nor against a finding that the Release was made knowingly and willfully. Neither of the parties makes an argument pertaining to this factor, and the relevant evidence in the record is spare. Therefore, the Court finds that this factor is neutral.

### iii.     Time for Deliberation

This factor weighs in favor of finding the Release was made knowingly and willfully. Courts in this District have previously found that "an employee must be afforded a reasonable amount of time to review the release before a waiver may be considered knowing and voluntary." *See Roberts*, 2004 WL 1887487 at *5 (D. Del. Aug. 23, 2004) *(*citing *Cole v. Gaming Entertainment, L.L.C.*, 199 F.Supp.2d 208, 213 (D. Del. 2002)). In *Roberts*, Plaintiff was provided with forty-five days to review the agreement as well as seven days post-execution to rescind, though it was noted the document was signed the same day it was received. *Id.* The Court found that the forty-five-day period "more than satisfies the reasonable amount of time requirement." *Id.* Here, the Release provided Plaintiff with an identical forty-five-day period in which he could consider signing the agreement and a seven-day period in which to rescind an executed agreement. (D.I. 1, Ex. C). The Court finds Plaintiff was provided with sufficient time to review the Release. This factor weighs in favor of Defendant.

### iv.     Plaintiff's Knowledge of Rights Prior to Execution

This factor weighs against finding that the Release was made knowingly and willfully. This Court has found "a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that his injury constitutes a legal wrong." *Roberts*, 2004 WL 1887487 at *6

(citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1286 (3d Cir. 1994)).  In *Roberts*, the plaintiff was discharged from her job after not being selected as a member of a new team.  *Id.*  Moreover, the plaintiff had "filed a rebuttal [to not being selected] implicating concerns of race discrimination."  *Id.*  On this information, the Court found that from her knowledge of the injury and knowledge of the cause of injury, plaintiff "should have been able to infer that retaliation might have been the motive for her not being selected for continued employment."  *Id.*

Though *Roberts* addressed a motion for summary judgment, the Court finds there is sufficient information in the pleadings to analyze whether this case is analogous to the one here. A review of the well-pleaded facts in the Complaint show it is not.  Upon returning from leave for cancer treatment, Plaintiff received a termination letter indicating that he was being relieved of his employment due to a reduction in force and was offered a severance package in exchange for a waiver of claims.  (D.I. 1 ¶¶ 15, 16, 19).  As discussed *infra*, the Release indicated that Plaintiff's signing of the Release and receipt of severance pay would result in the waiver of "any and all claims" he had against ALOFT.  (*Id.*, Ex. C at 1).  That said, the Release did not explicitly say that Plaintiff was waiving rights to FMLA claims and the well-pleaded facts indicate that Plaintiff did not – and likely could not – have known at the time of execution that his termination was actually based his supervisor's concern that "Plaintiff would miss too much work due to medical appointments" related to his diagnosis with colon cancer.  (*Id.* ¶ 24).  Viewing the well-pleaded allegations in the light most favorable to Plaintiff, it is unclear how Plaintiff could have been aware of his actual injury at the time of the Release's execution and thus whether he should have known his rights upon execution of the release before signing it.  This factor weighs in favor of Plaintiff.

> v.    *Encouraged to Seek Counsel*

This factor weighs in favor of finding the Release was made knowingly and willfully. The relevant inquiry for this factor is whether Defendant advised or "encouraged orally or in writing, not whether plaintiff in fact received the benefit of counsel." *Roberts*, 2007 WL 1887487, at \*6 (citing *Bennett v. Independence Blue Cross*, No. 92–4249, 1993 WL 15603, at \*3 (E.D. Pa. 1993)). Here, the Release states in capital and bolded letters that "**EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.**" (D.I. 1, Ex. C). Though there is no evidence in the record that Plaintiff was orally encouraged to seek counsel before signing the Release, the explicit language of the Release in combination with the time provided for consideration and consultation with counsel is sufficient to find that this factor weighs in favor of Defendant.

### vi. *Opportunity for Negotiation*

This factor weighs somewhat in favor of finding that the Release was made knowingly and willfully. Though neither of the parties makes an argument pertaining to this factor, the available evidence from the second and fourth factors tend to suggest that there was an opportunity for negotiation. Specifically, where the Release provided Plaintiff with forty-five days to consider the contents of the agreement and encouraged him to seek counsel, the Court finds this factor tends to weigh in favor of Defendant.

### vii. *Consideration in Exchange for Execution*

This factor weighs in favor of finding the Release was made knowingly and willfully. It is undisputed that Plaintiff received a payment $4,699.20 in conjunction with his signing of the Release. (D.I. 1 ¶20). Plaintiff now argues that "[n]owhere in the Release does it state that the amount received was a Severance Payment" and "Plaintiff would not have known whether the amount offered was an actual severance payment or whether the amount listed was consideration

for time worked and benefits owed." (D.I. 8 at 15-16). The relevant inquiry for this factor is whether Plaintiff received consideration to which he was not otherwise entitled. The Release states that the payment was made "[i]n exchange for signing this Agreement and General release and compliance with the promises made herein." (D.I. 1, Ex. C ¶2). Separately, Plaintiff's termination letter, received the same day, indicated he would "receive [his] final paycheck for the pay period . . . on March 3, 2017." (*Id.*, Ex. B). Lastly, Plaintiff's own Complaint indicates that "Plaintiff was offered a severance package on February 13, 2017, which included a payment of $4,699.20 in exchange for waiving various causes of action against the company, including causes of action related to claims under the FMLA." (D.I. 1 ¶20). Given the explicit language of the Release that $4,699.20 would be paid as consideration for Plaintiff's agreement, the termination letter indicating that he would receive a paycheck for his final pay period, and his own admission that the payment was in exchange for a claim release, the Court finds Plaintiff received consideration beyond what he was already entitled by law. This factor weighs in favor of the Defendant.

### viii. *Fraudulent Inducement*

This factor weighs against finding the Release was made knowingly and willfully as Plaintiff has made a plausible claim that he was fraudulently induced into signing the Release. As discussed *supra*, Plaintiff has established a plausible claim that his acquiescence to the Release was fraudulently induced. This weighs in favor of Plaintiff.

\*     \*     \*

Reviewing the factors above and the allegations in light most favorable to Plaintiff, the Court finds that the totality of the circumstances weighs in favor of finding that, at the motion to dismiss stage, Plaintiff has made a plausible claim that he did not enter the Release knowingly and willfully. Specifically, questions exist as to whether the language of the release was sufficiently

specific and whether Plaintiff was aware of his actual injury or rights stemming therefrom prior to the execution of the Release. Plaintiff has also asserted a plausible claim of fraudulent inducement. At a pleading stage, this is substantial enough to outweigh other factors which may favor Defendant. Thus, the Court finds the Release does not bar his plausible claim of retaliation under the FMLA relating to his February 2017 termination.

## IV.    **CONCLUSION**

For the forgoing reasons, Defendants' Motion to Dismiss Plaintiffs' Complaint is DENIED. An appropriate order will follow.